## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## DECEMBER TERM, 1860.

[CONTINUED FROM VOLUME IV.]

---

### THE STATE OF MINNESOTA *vs.* JOSEPH ULLMAN.

An indictment under *Sec.* 37, *p.* 706, *Stat. of Minn.*, for a malicious threat with intent to compel another to do any act against his will, should set forth the act which the accused intended to compel the performance of, with such particularity and certainty as to advise him of what he is charged with endeavoring unlawfully to effect, and to enable the Court to determine whether it is such an act as it would be an offence under the Statute to attempt to compel another, by malicious threats, to do against his will. The Statute was not intended to include acts indifferent in themselves, and that do not refer, directly or indirectly, to the offence defined in the Statute, but only such acts as deprive or tend to deprive the party threatened, of money, property, or some pecuniary advantage or confer the same on another. And an indictment which charged that certain threats were made maliciously "to compel" one Solomon against his will, to "sign a conveyance" of certain property in Saint Paul, is insufficient.

The indictment is further insufficient in that it does not charge with what " intent" the threats were made. Where the intention is made a material ingredient in the offence, it is always necessary to allege it.

The indictment in this case charged the Defendant "of the crime of verbally maliciously threatening to injure the person of another with intent thereby to compel the person so threat-

3

ened, to do an act against his will, committed as follows : The said Joseph Ullman at the city of Saint Paul in said county of Ramsey and State of Minnesota, on the 2d day of May, 1860, having seized one Meyer L. Solomon by the throat, and being engaged in injuring said Solomon by choking and compressing his neck with his, said Ullman's, hands, did feloniously, unlawfully and maliciously verbally threaten said Solomon that he would continue such choking and compressing of said Solomon's throat in which he was then and there engaged, as aforesaid, and would not desist therefrom unless said Solomon would agree to sign a conveyance of a certain lot of land situate in said City of Saint Paul, (describing same,) which said Solomon was unwilling to do, as said Ullman then and there well knew, and which aforesaid threat made by said Ullman so to continue such choking and compression of the throat of said Solomon as aforesaid, was so maliciously made by said Ullman, to compel said Solomon to sign such conveyance as aforesaid, against his will, contrary," etc., etc.

Points and authorities of Defendant :

*First.*—That it is not alleged in the indictment as a *fact*, that the threat was made with the *intent* to compel Solomon to do any act against his *will*.

*Second.*—That it is not charged in the indictment that the threat was made to compel the Prosecutor to do any act, but only to compel him to *agree* to do an act, and if he did so *agree* such act thereupon by the agreement ceased to be against the prosecutor's will. *Statute page* 706, *Sec.* 37.

*Third.*—That it is not charged in the indictment that said Defendant threatened to do any bodily injury to the person of Solomon.

*Fourth.*—Conceding that the threat was to compel the performance of an act, the act should have been charged and proven to have been beneficial to the Defendant or prejudicial to the rightsof Solomon, or which would in some manner interfere with the rights of Solomon. *Col. Statutes,* 706, *Sec.* 38.

*Fifth.*—That error was committed by said Judge in refusing to allow the introduction of the book referred to by the witness, the same being part of the *res jestae* and a memorandum of

the settlement made at the time, and was admissible to show such settlement.

*Sixth.*—The rejection of the testimony cannot be presumed by the Court to have had no influence upon the deliberations of the jury, but on the contrary in criminal cases it is presumed that its admission would have had an influence, and therefore the error committed entitles the Defendant to a new jury trial. *American Criminal Law*, 3090.

*Seventh.*—The Court erred in refusing to arrest the judgment.

I. V. D. HEARD, District Attorney.

J. & C. D. GILFILLAN, and SMITH & GILMAN, Counsel for Defendant.

*By the Court*—EMMETT, C. J.   This indictment was framed upon *Sec. 37, page 706, Com. Stat.*, which provides that "if any person, either verbally, or by any written or printed communication, shall maliciously threaten any injury to the person or property of another, with intent thereby to extort money, or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against his will, he shall be punished by imprisonment not more than one year nor less than six months, or by fine not exceeding five hundred dollars, nor less than one hundred dollars."

The offence with which the defendant is charged is a misdemeanor only, and one unknown to the common law.  The Courts have somewhat relaxed the rigid rules applicable to indictments for felonious crimes, where the offence is a mere misdemeanor, and in this State these rules are considerably modified by statute, even in regard to felonies.  It is a rule, however, applicable to all indictable offences, that every fact material to the offence charged and necessary to constitute the crime, should be stated with such clearness and certainty as to enable the accused to know exactly what he is charged with. If the indictment is for a larceny, it must describe with reasonable certainty, the property stolen—if a burglary, the dwelling house broken—if a forgery, the instrument forged—if an assault with intent to commit any felony, the particular crime intended to be committed—and if a malicious threat, with

intent to compel another to do any act against his will, the act which the accused intended to compel the performance of should be alleged with such particularity as to advise him of what he is charged with endeavoring thus wrongfully to effect, and to enable the Court to determine whether it is such an act, as it would be an offence under the statute to attempt to compel another by malicious threats, to do against his will.

The first portion of the section above recited, seems exclusively directed against attempts by threats to extort money or some other thing which would be of pecuniary advantage, and though towards the close, it makes use of the term "any act against his will," we are of opinion that the legislature did not intend to include acts indifferent in themselves, and that do not refer directly or indirectly to the offence defined in the first part of the ,Statute, but only such acts as deprive or tend to deprive the party threatened, of money, property, or some pecuniary advantage, or confer the same on another.

A person knowing the unwillingness of another to leave a particular town, farm or habitation, or publicly to retract a particular statement, publication, libel or slander, may maliciously, and with intent to compel him thus to leave, or retract, threaten to beat or shoot him if he do not, yet we do not think the party thus threatening would be guilty of the offence created by the statute under consideration. The statute must be construed as applying only to acts by which money, property or some pecuniary advantage may be acquired or lost. Otherwise, it might be extended to any act, however insignificant, idle, or sportive, and even to such as the party threatening might have the legal right to insist upon, if the party threatened was unwilling to do as required.

This indictment charges that Ullman made the threats in the manner stated "to compel" Solomon against his will to sign "a conveyance of a certain lot in Saint Paul," but does not state what manner of conveyance it was, nor to whom it was to be made, nor whether Solomon had any interest to convey, nor does it state any intent on the part of Ullman in making the threat.

We cannot tell from this what right or advantage, pecuniarily or otherwise, would be lost or acquired by the conveyance

when signed. Any instrument in writing, by which any interest in real estate may be created, aliened, mortgaged, or assigned, or by which the title may be affected in law or equity, except wills, leases for a term not exceeding three years, and executory contracts for the sale of lands, is a conveyance by our statutes. What sort of an instrument was this? What interest or estate was to be conveyed? Had Solomon any interest to convey? Was he to sign as principal, agent, or as a witness merely? Who would acquire, or who lose any money, property, or pecuniary advantage by the transaction when completed?

It would not be sufficient to charge a person with the forgery of a bank bill without describing the denomination, and purport of the bill, together with the name of the bank. Nor would an indictment be good which charged the Defendant with forging the signature of another to a mortgage of certain lands without particularly describing the mortgage. And if it simply charged the forgery of a *conveyance* of certain lands, it would be still more objectionable. How then can an indictment upon the Statute be sustained, which charges the threat to have been made to compel the party threatened to sign a conveyance of certain lands, without further description? Had the indictment charged that the threat was made with intent to compel the delivery of a horse, watch, or other personal property, without alleging to whom the property belonged, or that the party threatened had some interest in it, we could not have presumed that the property did not belong to the accused. For the same reason, it should be held in this case, that the indictment is insufficient unless it shows that the conveyance, if made by Solomon, might have deprived him of some interest or estate in the property. The gist of the offence, defined by the statute, is the attempt to extort by threats, money, property, or some pecuniary advantage from another, by compelling him to do some act against his will. And it is important to show that the person threatened had something to part with, and that the act, if done, would have tended to deprive him of his rights.

But to my mind, the most serious defect in this indictment is the omission of any allegation of intent. The threat, how-

ever made, does not amount to an offence, unless coupled with the *intent* to compel the person to do the act against his will. Where the intention is made a material ingredient in the offence, it is always necessary to allege it, and although our Statute declares that the words of a statute defining a public offence need not be strictly pursued in the indictment, but other words conveying the same meaning may be used, yet in this case, not only are the words *"with intent"* used in defining the offence, omitted entirely, but there are no others of any kind or meaning used instead. We must presume that all the words and terms used in defining an offence are essential, and can only excuse their omission when others of similar import and meaning are substituted. If it be sufficient to allege in the indictment, that the threat was made to compel another to do an act against his will, omitting the words *"with intent,"* the legislature would doubtless have omitted them in defining the offence. If these words may be omitted in this indictment, they may be omitted in all indictments for assaults, or burglaries with intent to commit felonies, and it would then be sufficient to charge that A, at, &c., feloniously broke into and entered in the night time, the dwelling house of B to commit a murder, rape, or larceny therein, &c., omitting the words, " with intent," and using none of the same meaning in their stead. This we are confident would not be sufficient, and yet the intent, purpose, or object of the assault, or burglarious breaking would be as fully implied from the language of such an indictment, as is the intent, purpose or object of the threat, from the language of the indictment under consideration.

We think this indictment will not sustain the conviction, and that the Court below erred in so far as the Judge instructed the jury that the act which the Defendant intended by the threat to compel Solomon to do, might be any act, not merely idle or sportive, which he was unwilling to do; and in so far as he refused to charge that the act must not be indifferent in itself.

Conviction set aside and new trial awarded.